UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RUBEN AMAYA, individually, and
on behalf of other members of
the general public similarly
situated, and on behalf of
aggrieved employees pursuant to
the Private Attorneys General
Act,

           Plaintiff,

    v.

APEX MERCHANT GROUP, LLC, dba
EXPRESS PROCESSING, an unknown
entity; FIRST AMERICAN PAYMENT
SYSTEMS, an unknown entity; and
DOES 1-100, inclusive,

           Defendants.

CIV. NO. 2:16-00050 WBS CKD

MEMORANDUM AND ORDER RE:
MOTION TO REMAND

----oo0oo----

       Plaintiff Ruben Amaya initiated this class action

against defendants Apex Merchant Group, LLC ("Apex") and First

American Payment Systems ("First American"), alleging various

violations of the California Labor and Business and Professions

1

1  Codes.  Defendant First American removed this action from

2  Sacramento County Superior Court pursuant to the Class Action

3  Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Notice of Removal

4  ("Notice") (Docket No. 1).)  Plaintiff now moves to remand

5  pursuant to 28 U.S.C. § 1447, contending that defendant has not

6  established that the amount in controversy exceeds $5,000,000.

7  (Mot. to Remand (Docket No. 8).)  Defendant opposes.  (Opp'n

8  (Docket No. 9).)

9  I.    Background

10        Plaintiff seeks to represent a class of current and

11  former California-based exempt independent contractors with the

12  job title "sales consultants" or those that performed similar

13  duties who were employed by defendants from November 12, 2011 to

14  the date of final judgment.  (Notice, Nelson Decl. Ex. C

15  ("Compl.") ¶¶ 14, 18-26.)  Plaintiff was employed by defendants

16  for approximately one month in July 2015 and alleges that he and

17  the other sales consultants were misclassified as exempt

18  employees.  (Id. ¶ 19.)

19        Plaintiff asserts nine causes of action under

20  California law: (1) failure to pay overtime wages, Cal. Labor

21  Code §§ 510, 1198; (2) failure to provide meal periods and pay

22  the meal period premium, id. §§ 226.7, 512(a); (3) failure to

23  provide rest periods and pay the rest period premium, id.

24  § 226.6; (4) failure to pay minimum wage, id. §§ 1994, 1197,

25  1197.1; (5) failure to pay owed wages at the time of discharge,

26  id. §§ 201, 202; (6) failure to provide complete and accurate

27  wage statements, id. § 226(a); (7) failure to reimburse necessary

28  business-related expenses and costs, id. §§ 2800, 2802; (8)

2

1  Private Attorney General Act of 2004 ("PAGA") violations

2  warranting a civil penalty, id. §§ 2698 et seq.; (9) unlawful

3  business acts and professions, Cal. Bus. & Professions Code

4  §§ 17200-17210.  (Id. ¶¶ 54-128.)

5       The Complaint does not allege a specific amount of

6  damages.  The Complaint merely states that the amount in

7  controversy for the named plaintiff, including but not limited to

8  claims for compensatory damages, restitution, penalties, wages,

9  premium pay, and pro rata share of attorney's fees, is less than

10 $75,000.  (Id. ¶ 1.)  Further, the Complaint does not allege the

11 frequency of the alleged violations, stating only that violations

12 occurred "[a]t all material times set forth herein."  (Id. ¶¶ 19,

13 26, 38-45.)

14 II.  Discussion

15      "[A]ny civil action brought in a State court of which

16 the district courts of the United States have original

17 jurisdiction, may be removed by the defendant or the defendants,

18 to the district court of the United States for the district . . .

19 where such action is pending."  28 U.S.C. § 1441(a).  Under the

20 Class Action Fairness Act ("CAFA"), federal courts have original

21 jurisdiction over civil class action cases in which the amount in

22 controversy exceeds $5,000,000, the parties are minimally

23 diverse, and the proposed class has at least 100 members.  28

24 U.S.C. § 1332(d).  There is no anti-removal presumption in CAFA

25 cases.  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct.

26 547, 554 (2014).

27      A defendant seeking to remove a case to federal court

28 must file a notice of removal containing a "short and plain

3

statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Id.; see also 28 U.S.C. § 1446(a). If the plaintiff's complaint demands monetary relief of a stated sum, that stated sum, if asserted in good faith, is deemed to be the amount in controversy. Dart, 135 S. Ct. at 551. When the plaintiff's complaint does not state the amount, the defendant's notice of removal may do so. Id.; 28 U.S.C. § 1446(c)(2)(A). The defendant's alleged amount in controversy should be accepted if it is not contested by the plaintiff or questioned by the court. Dart, 135 S. Ct. at 553.

Where the plaintiff contests the amount in controversy alleged by the removing defendant, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554. Where the complaint does not specify a particular amount of damages, as in this case, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[5,000,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Id.

The amount in controversy includes general and special damages (excluding costs and interests), attorney's fees if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law. Chambers v. Penske Truck Leasing Corp., Civ. No. 1:11-00381 LJO GSA, 2011 WL 1459155, at *2 (E.D. Cal. Apr. 15, 2011).

4

1    If "it appears that the district court lacks subject

2  matter jurisdiction, the case shall be remanded."  28 U.S.C.

3  § 1447(c).  If, under the preponderance of evidence standard, the

4  evidence submitted by both sides is balanced, "the scales tips

5  against federal-court jurisdiction."  Ibarra v. Manheim Invs.,

6  Inc., 775 F.3d 1193, 1199 (9th Cir. 2015).

7    Plaintiff does not dispute class numerosity or that he

8  is a citizen of California and is therefore diverse from

9  defendant First American, a limited partnership headquartered in

10  Texas and incorporated in Delaware.  (Mot. to Remand at 1; Notice

11  ¶¶ 9-11.)  The sole issue is whether defendant established that

12  it is more likely than not that the amount in controversy exceeds

13  $5,000,000.

14    A.    Defendant's Calculations of the Amount in Controversy

15    The only evidence defendant submitted is a declaration

16  by Paul Novelli, the custodian of records at Apex.  (Opp'n

17  Novelli Decl. (Docket No. 9-1).)  Novelli states that he reviewed

18  the Apex database of business records and determined that,

19  between November 11, 2011 and November 12, 2015, Apex had a

20  contractual relationship with more than 1,750 sales consultants

21  in California.  (Id. ¶ 6.)  Of the 1,750 sales consultants,

22  contractual relationships with 1,737 were terminated before

23  November 12, 2015.  (Id. ¶ 7.)  Based on this information,

24  defendant calculated that the amount in controversy exceeds

25  $5,000,000 based on causes of action two, four, and five alone.

26  (Notice ¶¶ 21-24.)

27    Under cause of action four, plaintiff seeks penalties

28  under California Labor Code section 1197.1 for failure to timely

5

pay each class member minimum wages.  (Compl. ¶ 86.)  Section

1197.1 provides penalties of $100 for the initial violation and

$250 for each subsequent violation.  Cal. Labor Code § 1197.1.

Defendant assumed that the class members were employed for a two-

month period, or 7.4 pay periods, based on the fact that

plaintiff was employed for about a month and claims to be

representative of the putative class members.  (Opp'n at 8.)

Defendant also assumed a 100% violation rate of the minimum wage

requirements during those 7.4 pay periods.  Thus, defendant

concluded the amount in controversy for this claim was

$3,412,500.[1]  (Notice ¶ 21.)

Under cause of action five, plaintiff requests

penalties under California Labor Code section 203, which provides

that if an employer willfully fails to pay wages owed at the time

of discharge, the wages of the employee shall continue as a

penalty from the due date until paid or an action is commenced,

but for no more than thirty days.  (Compl. ¶ 92.)  Defendant

assumed the 1,737 sales consultants whose contracts were

terminated before November 12, 2015 were entitled to no less than

the 2008 California minimum wage of $8 per hour for the full

thirty day maximum.  (Notice ¶ 22.)  Defendant reasoned that it

was making a "conservative assumption" by using the 2008 minimum

wage of $8, rather than the 2014 minimum wage of $9 per hour or

the 2016 rate of $10 per hour.  (Id.)  Defendant concluded that

the amount in controversy for the unpaid wages claim was

$3,335,040.[2]  (Id.)

---

[1]   $(1,750*\$100)+(1,750*250*7.4)=\$3,412,500$
[2]   $(\$8*8 \text{ hours})*30 \text{ days}*1,737=\$3,335,040$

1    Lastly, under cause of action two, plaintiff requests

2    penalties under California Labor Code section 226.7, which

3    provides that if an employer fails to provide meal or rest

4    periods it shall pay the employee one additional hour of pay at

5    the employee's regular rate of compensation for each workday that

6    the meal or rest period is not provided.  (Compl. ¶ 73.)

7    Defendant again assumed 1,750 class members all fell within the

8    waiting time penalties statute of limitations, were paid the 2008

9    minimum wage of $8 per hour, and worked a full eight hour day and

10   were therefore entitled to meal and rest periods every workday

11   during the two-month time period.  Using these numbers, defendant

12   concluded the amount in controversy for this cause of action was

13   $1,212,400.[3]  (Notice ¶ 24.)  Defendant therefore argues the

14   amount in controversy is at least $7,959,940, not including the

15   remaining causes of action.

16   B.    Amount in Controversy in Class Action Fairness Act

17         Cases

18   CAFA's "primary objective" is to ensure "[f]ederal

19   court consideration of interstate cases of national importance."

20   Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1350 (2013)

21   (citation omitted).  The amount in controversy requirement under

22   CAFA is "to be tested by consideration of real evidence and the

23   reality of what is at stake in the litigation."  Ibarra, 775 F.3d

24   at 1199.  "[W]hen the defendant relies on a chain of reasoning

25   that includes assumptions to satisfy its burden to prove by a

26   preponderance of the evidence that the amount in controversy

27

28   _____

     [3]    ($8*43.3 work days in a two-month period)*1,750*2 for
     meal and rest breaks=$1,212,400

                                    7

exceeds $5 million, the chain of reasoning and its underlying assumptions must be reasonable." LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1201 (9th Cir. 2015).

"Courts have been skeptical of high CAFA estimates that rely solely on declarations with non-specific human resource data." Page v. Luxottica Retail N. Am. Inc., Civ. No. 2:13-01333 MCE KJN, 2015 WL 966201, at *11 (E.D. Cal. Mar. 4, 2015). For example, in Ibarra, the Ninth Circuit found that the defendant's assumption that the class members were denied one meal break and one rest break on each and every shift based on plaintiff's allegation that there was a "pattern and practice" of labor law violations at the place of employment was unreasonable. Id. at 1198-99. The court found that "a 'pattern and practice' of doing something does not necessarily mean always doing something" and since the complaint did not allege universal violations, defendant bore the burden of showing it relied on reasonable assumptions.

Similarly, in Garibay v. Archstone Cmtys. LLC, the Ninth Circuit found defendants failed to meet their burden when the only evidence they proffered in support of their amount in controversy calculations was a declaration by the supervisor of payroll setting forth the number of employees, number of pay periods, and general information about hourly wages. 539 F. App'x 763, 764 (9th Cir. 2013). The court found that defendants unreasonably assumed, based on this declaration alone, wage statement violations for every pay period, maximum penalties for failure to timely pay wages for every employee, and denials of meal or rest periods twice each week. Id.

In _Page_, the court found defendants' calculation of the amount in controversy to be "based entirely on assumptions and speculative calculations." 2015 WL 966201, at *7. The only evidence defendants submitted in support of their estimates was a declaration from the director of human resources with information on the periods of employment, rates of pay, and shift lengths during the alleged class period. Id. at *3. This was insufficient to support defendants' assumption that each employee worked five shifts per work week and 100% of the meal and rest breaks were at issue, even though plaintiff only alleged that the missed breaks were a peripheral result of understaffing at defendants' stores. Id. at *7-9. Because there was no "allegation of a widespread policy" of preventing employees from taking breaks, the court found defendants overestimated the amount in controversy. Id. at *9-10. There was also insufficient "underlying evidence" to assume each employee was entitled to recover the full thirty-day maximum penalty for failure to timely pay wages. Id. at *14-15.

In contrast, in _LaCross_, the Ninth Circuit found the defendant had produced sufficient evidence to establish the amount in controversy for a reimbursement claim by extrapolating fuel costs based on the actual invoiced fuel costs in the first quarter and the actual number of drivers who signed the independent contractor agreements during the class period. 775 F.3d at 1203.

Defendant's calculations in this case are largely based on unsupported assumptions. As discussed above, the only evidence defendant submitted was a declaration from Paul Novelli,

9

the custodian of records at Apex, with data on the number of
sales consultants employed and terminated in California during
the relevant time period.  At the hearing on March 7, 2016,
defense counsel argued that defendant does not have access to
more detailed records because it is not the direct employer--its
co-defendant, Apex, is an independent contractor and the employer
of the sales consultants.  However, even if defendant is not the
direct employer, the court is not persuaded that more detailed
information is unavailable to defendant.  The fact that defendant
was able to secure a declaration from the custodian of records at
Apex demonstrates that defendant does indeed have access to the
Apex database of business records and submitted limited evidence
only because it requested limited information.

        For example, instead of consulting Apex's records to
determine what the actual hire and termination dates were for its
employees, defendant assumed a two-month employment period.
Defendant claims that it elected two months to reflect
plaintiff's time of employment but plaintiff was only a sales
consultant for one month.  (Opp'n at 8.)

        Further, defendant assumed a 100% violation rate of
meal and rest periods and minimum wage requirements even though
the Complaint makes no allegations with respect to the frequency
of these violations and instead only alleges violations occurred
"[a]t all material times set forth herein."  (Id. ¶¶ 19, 26, 38-
45.)  Just as "pattern and practice" did not necessarily mean
violations each and every time in Ibarra, "all material times"
cannot be read in such a fashion without any further evidence
from defendant.  Defendant also speculated that every class

member worked a full eight hour day, and was therefore entitled
to these benefits, rather than consulting payroll records.
Defendant counters that it did not assume a 100% violation rate
because it only looked at a two-month time period rather than the
entire period between November 2011 and November 2015.  (Opp'n at
8.)  However, "the fact [defendant] could have assumed a higher
amount does not make [its] estimate any less speculative."  Page,
2015 WL 966201, at *13.

        Lastly, defendant assumed without any explanation that
all class members are entitled to recover the full thirty-day
maximum penalty for failure to pay wages owed at the time of
discharge.  Plaintiff's Complaint did not allege every employee
was entitled to the full thirty days but rather that the "other
class members are entitled to recover from Defendants the
statutory penalty wages for each day they were not paid, up to a
thirty (30) day maximum."  As in Garibay and Page, it is
unreasonable to assume the maximum penalty without any supporting
evidence.

        Based on the evidence submitted by defendant, the court
cannot conclude that it is more likely than not that the amount
in controversy exceeds $5,000,000.  While plaintiff did not
submit any evidence contradicting defendant's calculations--such
as information regarding the named plaintiff's own missed meal
and rest periods or overtime hours--the burden is on the removing
defendant to establish the amount in controversy.  Accordingly,
the court will provide defendant with an opportunity to provide
more specific information establishing that the amount in
controversy exceeds $5,000,000.  Plaintiff may also submit

1  additional evidence if it so desires.

2          IT IS THEREFORE ORDERED that the parties have thirty

3  days from the date this Order is signed to submit more specific

4  evidence regarding the amount in controversy in this case.  The

5  court will rule on plaintiff's motion to remand after reviewing

6  any submitted evidence.

7  Dated:  March 7, 2016

   WILLIAM B. SHUBB
8  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28