UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RUBEN AMAYA, individually, and on behalf of other members of the general public similarly situated, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>APEX MERCHANT GROUP, LLC, dba EXPRESS PROCESSING, an unknown entity; FIRST AMERICAN PAYMENT SYSTEMS, an unknown entity; and DOES 1-100, inclusive,<br><br>　　　　　Defendants. | CIV. NO. 2:16-00050 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND |

----oo0oo----

The court has considered the supplemental evidence submitted by defendant First American Payment Systems ("First American") and plaintiff Ruben Amaya regarding the amount in controversy in this class action for wage and hour violations.

1

(Docket Nos. 15, 16.)  First American removed this action from Sacramento County Superior Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Docket No. 1.)  Plaintiff moved to remand pursuant to 28 U.S.C. § 1447, contending that First American had not established that the amount in controversy exceeds $5,000,000.  (Docket No. 8.)  On March 7, 2016, this court granted the parties thirty days to submit more specific evidence regarding the amount in controversy in this case.[1]  (March 7, 2016 Order at 12 (Docket No. 12).)

Where the plaintiff contests the amount in controversy alleged by the removing defendant, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).  The party seeking removal bears the burden of establishing that the amount in controversy exceeds $5,000,000.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."  Sanchez, 102 F.3d at 404.

Courts strictly construe the removal statute against removal jurisdiction.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); Nolan v. Kayo Oil Co., Civ. No. 11-00707 MEJ, 2011 WL 2650973, at *2 (N.D. Cal. July 6, 2011).  If "it appears

---

[1] Plaintiff submitted its supplemental evidence thirty days from the date the court's Order was docketed instead of thirty days from the date the March 7, 2016 Order was signed.  The Order specified that the parties would be given thirty days from the date the Order was signed.  While plaintiff therefore submitted its evidence one day late, the court will not strike plaintiff's evidence on such a technicality.

2

that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If, under the preponderance of evidence standard, the evidence submitted by both sides is balanced, "the scales tips against federal-court jurisdiction." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015).

In an effort to bolster its claim that the amount in controversy in this case exceeds $5,000,000, First American submitted a supplemental declaration by Paul Novelli, the custodian of records at Apex, and an attached excel sheet with the start dates, end dates, and total business days worked by sales consultants employed by Apex in California between November 11, 2011 and November 12, 2015. (Suppl. Novelli Decl. (Docket No. 15-1).) Novelli states that the Apex database of business records indicates that Apex had a contractual relationship with more than 1,767 sales consultants in California between November 11, 2011 and November 12, 2015, contractual relationships with 1,737 of the 1,767 were terminated before November 12, 2015, and the "collective tenure" of the sales consultants was 47,582 business days. (Id. ¶¶ 6-9.) Novelli also reports that sales consultants were paid not less than once a week. (Id. ¶ 10.) Only the information regarding the total business days worked and the weekly pay periods is new evidence that was not already submitted to this court.

Based on this limited evidence, First American estimates that the amount in controversy totals $11,274,056. (Def.'s Suppl. Evid. at 4 (Docket No. 15).) In contrast, plaintiff contends that only $3,525,889.85 is at stake. (Pl.'s

3

Suppl. Evid. at 9 (Docket No. 16).)  As will be discussed in more detail below, the court finds that despite being provided an opportunity to submit more specific evidence, First American has failed to establish that it is more likely than not that the amount in controversy exceeds $5,000,000.

A. <u>Unpaid Overtime</u>

Under plaintiff's first cause of action, plaintiff seeks to recover unpaid overtime compensation, Cal. Labor Code §§ 510, 1194, 1198.  (Compl. ¶¶ 61-62 (Docket No. 1-1).)  While the Complaint does not allege the frequency of overtime violations, it states that "[a]t all material times set forth herein, Defendants failed to pay overtime wages to plaintiff and the other class members for all hours worked.  Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation."  (<u>Id.</u> ¶ 38.)  Based on this allegation, First American conservatively assumed that each of the 1,767 sales consultants worked one hour of overtime, was paid the 2008 minimum wage of $8 per hour, and the amount in controversy is therefore $21,204.[2]  (Def.'s Suppl. Evid. at 2.)

Plaintiff argues for the first time that class members are entitled to only thirty minutes each of overtime pay for uncompensated time spent on training.  (Pl.'s Suppl. Evid. at 1.)  He contends that he and "the putative class members are only entitled to overtime wages for the time they spent in training, for they were outside salespersons in the remaining time."  (<u>Id.</u>

---

[2] $12 (one hour of pay at one-and-one-half times the regular minimum wage rate)*1,767*1=$21,204.

at 2.)  This directly contradicts plaintiff's allegation in his Complaint that he and the other sales consultants were misclassified as independent contractors.  (See Compl. ¶ 26 ("Defendants engaged in a uniform policy and systematic scheme of wage abuse against their exempt independent contractors with the job title 'Sales Consultants' or those that performed similar duties within the State of California.  This scheme involved, inter alia, misclassifying them as independent contractors.").) Because First American could not have anticipated plaintiff's departure from his original theory of the case and First American conservatively assumed only one hour of overtime per employee based on plaintiff's allegations that each employee suffered an overtime violation, First American has met its burden under this cause of action.

B. <u>Unpaid Meal and Rest Period Premiums</u>

Under causes of action two and three plaintiff seeks penalties under California Labor Code section 226.7, which provides that if an employer fails to provide meal or rest periods it shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.  (Id. ¶ 73); Cal. Labor Code § 226.7(c).  First American assumed, without any supporting evidence, that there was one missed rest period and one missed meal period on each of the 47,582 work days, creating an amount in controversy of $761,312.[3]  (Def.'s Suppl. Evid. at 3.) Plaintiff instead argues that each class member is entitled only

---

[3]   $8 (one additional hour of pay)*47,582 (work days)*2 (for meal and rest periods)=$761,312.

to meal and rest periods for the non-outside sales related work they performed while attending two days of online training sessions, creating an amount in controversy of $63,612.[4] (Pl.'s Suppl. Evid. at 3.)  In contrast to the specific evidence offered by plaintiff, First American provides no justification for its estimation of one missed meal and rest break per day. Accordingly, the court must find First American failed to meet its burden and assume that plaintiff is correct that only $63,612 is at stake on plaintiff's second and third claims.

C. Penalties for Failure to Timely Pay Minimum Wages

Under cause of action four, plaintiff seeks to recover the unpaid balance of minimum wage compensation and penalties for failure to timely pay minimum wages.  (Compl. ¶ 86.)  Section 1197.1 provides penalties of $100 for the initial violation and $250 for each subsequent violation.  Cal. Labor Code § 1197.1. First American argues that $2,104,450 is at stake but yet again fails to provide factual support for its assumption that each class member not only suffered an initial violation but also four subsequent violations.  Accordingly, the court will again rely on plaintiff's assertion that each class member is owed thirteen hours and thirty minutes of minimum wage compensation for the time they spent preparing for and attending the two training sessions and that there were no subsequent violations, putting $391,390.60 at stake on this claim.

D. Penalties for Failure to Pay Wages When Terminated

Under cause of action five, plaintiff requests

---

[4] 1,767*$9 (the 2014 minimum wage in effect during plaintiff's employment)*2 (work days)*2 (for meal and rest periods)=$63,612

6

penalties under California Labor Code section 203, which provides that if an employer willfully fails to pay wages owed at the time of discharge, the wages of the employee shall continue as a penalty from the due date until paid or an action is commenced, but for no more than thirty days.  (Compl. ¶ 92); Cal. Labor Code § 203(a).  As in its original opposition, First American assumed the 1,737 sales consultants whose contracts were terminated before November 12, 2015 were entitled to the 2008 California minimum wage of $8 per hour, for an eight-hour-day, for the full thirty day maximum, putting $3,335,040 in controversy.[5]  (Id.) First American, however, fails to take into account the three-year statute of limitations period for waiting time penalties. In consulting the Apex records, plaintiff determined that only 1,230 employees were terminated within the limitations period. (Pl.'s Suppl. Evid. at 7.)  Thus, even assuming an eight-hour-day and the full thirty day penalty period, this brings the amount in controversy down to $2,361,600.

E. Non-Compliant Wage Statements

Under cause of action six, plaintiff seeks penalties for non-compliant wage statements pursuant to California Labor Code section 226(a), which provides $50 for the initial pay period in which a violation occurs and $100 per employee for each subsequent violation, not to exceed an aggregate of $4,000. (Compl. ¶ 97); Cal. Labor Code § 226(a).  First American argues that all 1,767 class members received inaccurate wage statements on a weekly basis and concludes that $401,400 is at stake.[6]

---

[5]   ($8*8 hours)*30 days*1,737=$3,335,040
[6]   (1,767*50) + ((1,720 putative class members whose tenure was 39 weeks or less*100*the number of subsequent pay

Again, First American failed to take into the account the one-year statute of limitations. According to plaintiff, only 200 class members were employed during the statute of limitations--between November 12, 2014 and the present. (Pl.'s Suppl. Evid. at 7.) Plaintiff therefore argues 200 class members received inaccurate statements twice a month, or for 528 pay periods, making this claim worth $62,800. Even if First American is correct that class members received inaccurate wage statements on a weekly basis, First American clearly failed to take into account the statute of limitations and overestimated the amount in controversy for this claim.

F. Reimbursement for Business Expenses

Under plaintiff's seventh cause of action, he seeks reimbursement for business expenses. (Compl. ¶ 105); Cal. Labor Code §§ 2800, 2802. The Complaint alleges only that plaintiff and other class members were not fully reimbursed for "personal cellular phones, internet service fees, mileage on personal vehicles, computers, paper, ink, and other office supplies" but provides no specific dollar amount. (Compl. ¶ 103.) First American therefore estimates that each class member would seek $200 in business expenses, for a total of $353,400. (Def.'s Suppl. Evid. at 6.) Plaintiff specifically outlines the $380.20 of business expenses he is allegedly owed for mileage, gas, cellular phone, internet, and office supplies and multiplies this number by the total number of class members for a total of $671,460. (Pl.'s Suppl. Evid at 8.) The court will rely on

---

periods)+(47 putative class members whose tenure was more than 39 weeks*3,950))=$401,400.

8

plaintiff's higher estimation as it is grounded in more specific facts.

G. Private Attorney General Act

Lastly, under cause of action eight, plaintiff seeks statutory penalties under the Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698 et seq. (Compl. ¶¶ 106-109.) First American contends that $4,297,250 is in controversy under this claim. (Def.'s Suppl. Evid. at 6.)  The Ninth Circuit has made clear, however, that PAGA claims are not representative claims that go towards the amount in controversy in a class action under CAFA. Yocupicio v. PAE Group, LLC, 795 F.3d 1057, 1060-61 (9th Cir. 2015); see also Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1121 (9th Cir. 2014) (finding that PAGA actions are "not sufficiently similar to Rule 23 class actions to trigger CAFA jurisdiction"). PAGA actions are "fundamentally different from class actions, chiefly because the statutory suits are essentially law enforcement actions" and "the bulk of any recovery goes to the LWDA, not to aggrieved employees." Baumann, 747 F.3d at 1121, 1123.  As a result, the court will not count plaintiff's PAGA claims towards the amount in controversy.

H. Conclusion

Despite the opportunity to provide supplemental evidence, First American's calculations in this case are still largely based on unsupported assumptions.  Plaintiff submitted detailed evidence supporting his assertion that the case is worth less than $5,000,000--such as information regarding his own missed meal and rest periods, overtime hours, and owed business expenses--while First American failed to take into account

9

statutes of limitations and relied solely on the number of sales consultants employed, the number terminated before November 12, 2015, and their "collective tenure." Accordingly, the court must find that First American relied on speculative and self-serving assumptions and failed to establish that it is more likely than not that the amount in controversy exceeds $5,000,000. Given that courts must strictly construe the removal statute against removal jurisdiction, the court must grant plaintiff's motion to remand. See Gaus, 980 F.2d at 566.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 8) be, and the same hereby is, GRANTED. This matter is hereby REMANDED to the Superior Court for the State of California, in and for the County of Sacramento.

Dated: April 25, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE